UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA

                -against-

ANTHONY ROMANELLO, LUAN BEXHETI, and
JOSEPH CELSO,

                Defendants.

------------------------------------x

**MEMORANDUM & ORDER**
22-CR-194(EK)

ERIC KOMITEE, United States District Judge:

        Defendants Anthony Romanello, Luan Bexheti, and Joseph Celso await trial on charges of extortionate collection of credit and conspiracy. *See* Indictment 1-2, ECF No. 1. Romanello moves to dismiss the charges against him on three grounds: (1) preindictment delay; (2) selective or vindictive prosecution; and (3) failure to state an offense. Romanello's Mot. for Omnibus Relief 1, ECF No. 46. Alternatively, Romanello moves to sever his case from Bexheti's. Mot. 2. For the reasons set forth below, these motions are denied.

## I. Discussion

### A. Preindictment Delay

        Romanello first moves to dismiss based on preindictment delay under Federal Rule of Criminal Procedure 12(b)(3)(A)(ii). He argues that the government violated his due process rights by indicting him on April 29, 2022 for conduct that occurred "between March 2017 and June 2017" — near the end

of the five-year statute of limitations period.  Indictment 1; *see* Romanello's Mem. Supp. Mot. for Omnibus Relief ("Romanello Mem.") 2–3, ECF No. 48.  According to his attorney's affidavit, this delay prejudiced him: one potential witness, Anthony Federici, recently died, and "it is believed" that "some of the eyewitnesses" to the allegedly extortionate collection event no longer work at the restaurant where it occurred.  *Id.* at 3.  Other witnesses' "recollections have dimmed with the lengthy passage of time."  Decl. of Gerald J. McMahon ("McMahon Decl.") ¶ 12, ECF No. 47.  Romanello's brief also indicates that he has experienced "noticeable diminishment in his [own] cognitive and physical abilities" due to advancing age, which may inhibit his ability to testify.  Romanello Mem. 3.

        The applicable statute of limitations is the "primary guarantee" against prosecution on stale criminal charges. *United States v. Ewell*, 383 U.S. 116, 122 (1966).  Prosecutions initiated within the limitations period carry a "strong presumption of validity."  *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999).[1]  When a case is brought within the statutory period, a defendant seeking dismissal bears the "heavy burden" of "proving" both actual prejudice to his right to a

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

2

fair trial *and* that the government's delay "was an intentional device to gain a tactical advantage over the accused." *Id.* at 752. The proof of "actual prejudice" must go beyond the "real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses [will] become inaccessible, and evidence [will] be lost." *United States v. Marion*, 404 U.S. 307, 326 (1971). And the government's conduct must be "unjustifiable." *United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir. 1979).

The parties do not dispute that the government brought this case within the statute of limitations. Thus, Romanello must prove both actual prejudice and that the government intentionally and unjustifiably delayed for tactical advantage. He has not adequately alleged — let alone proven — either.

Romanello's assertion of prejudice is brief and unconvincing.[2] He points to the death of "a witness, Anthony Federici" and the "disappear[ance]" of other unnamed "potential witnesses." Romanello Mem. 3; McMahon Decl. ¶ 12. Yet

---

[2] It is also based entirely on assertions in an affidavit of Romanello's counsel (partially "upon information and belief") and in Romanello's briefs. *E.g.*, McMahon Decl. ¶ 12; Romanello Mem. 2-3. Romanello has not submitted an affidavit of his own. *Cf., e.g., United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) (attorney affidavit raised no fact issue absent attorney's personal knowledge); *United States v. Crisona*, 440 F. Supp. 24, 26-27 (S.D.N.Y. 1977) ("The claim that the pre-indictment delay was due entirely to the prosecution's unfruitful attempt to obtain Crisona's cooperation is made only upon information and belief" and thus "transgresses the rule that factual averments in support of such applications must be made by affiants with personal knowledge.").

Romanello never alleges that any such witness — including Federici — would have testified favorably. *See United States v. King*, 560 F.2d 122, 130 (2d Cir. 1977) (death of a named witness was insufficiently prejudicial where the defense gave no indication that testimony would have "aided their case"). Indeed, Romanello does not allege what, specifically, Federici witnessed.  Romanello also contends that time has dimmed witnesses' memories, but that is the very "possibility of prejudice inherent in any extended delay" that has been held inadequate to establish actual prejudice. *Marion*, 404 U.S. at 326.  Romanello also fails to allege with any specificity how his advancing age will prevent him from receiving a fair trial.

Romanello additionally fails to carry his "heavy burden" of showing tactical delay on the government's part. *See Cornielle*, 171 F.3d at 752.  Instead, he speculates — without factual support — that the government delayed his indictment "hoping" that he would engage in further criminal activity. Romanello Mem. 2-3.  Similarly, he does not contend (let alone cite evidence) that the government delayed in the hopes of rendering Federici unavailable to testify in his defense.

Romanello also argues that his history with the U.S. Attorney's Office for this district proves that the government delayed this prosecution for tactical advantage.  He asserts that this is not the first time the Office has indicted him late

in a limitations period.  Romanello Mem. 3 ("Thirteen years ago, this same prosecutor's office waited ten years after all evidence of criminality had been obtained before charging Mr. Romanello.").  Romanello argues that this "pattern" of eleventh-hour indictments is "at best . . . unseemly and inappropriate" and "at worst . . . violative of Mr. Romanello's right to due process."  Romanello Reply 3.

But Romanello proffers even fewer specifics regarding the prior prosecution than this one, and his theory does not — without specific evidence in support — come close to establishing that the government action here was "unjustifiable."  *See Elsbery*, 602 F.2d at 1059.  In the end, Romanello merely invokes two instances of government action that were both presumptively permissible, carried out by different generations of Assistant U.S. Attorneys.  He does not establish a *prima facie* case that any instant delay was tactical.  The motion to dismiss for preindictment delay is denied.

## B.   **Vindictive Prosecution**

Romanello also moves to dismiss under Rule 12(b)(3)(A)(iv), asserting vindictive prosecution in violation of the Due Process Clause of the Fifth Amendment.[3]  Vindictive prosecution occurs when a charging decision is made "solely" in

---

[3] The Motion also cursorily references "selective" prosecution, Mot. 1, but Romanello's briefing does not argue that this prosecution is selective.

retaliation for "the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982). An indictment may be dismissed on this basis in two circumstances: if "there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action" or "if there is a finding of 'actual' vindictiveness." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999).

Here, Romanello ascribes a vindictive motive to the prosecution based in large part on a "promise" that he claims two FBI agents made to him in 2010: that "he would be arrested on an old gambling charge if he did not become a cooperating witness for the government." Romanello Mem. 4. Romanello declined to cooperate, and he claims that the U.S. Attorney prosecuted him for racketeering conspiracy in retaliation for this refusal. *See id.*; McMahon Decl. ¶ 19. That prosecution ended in Romanello's guilty plea to racketeering conspiracy in 2012. McMahon Decl. ¶¶ 27–28. Between the plea and sentencing in that case, the U.S. Attorney also charged Romanello in a separate case with extortionate collection of credit and conspiracy; Romanello was tried and acquitted in the latter case in 2012. *Id.* ¶¶ 32–33, 37; Superseding Indictment 12–13, *United*

*States v. Graziano*, 12-CR-50 (S.D.N.Y. Apr. 26, 2012), ECF No. 128.

The law of vindictive prosecution arose many decades ago, in cases like *North Carolina v. Pearce*, 395 U.S. 711 (1969) (vindictive resentencing), and *Blackledge v. Perry*, 417 U.S. 21 (1974) (vindictive post-appeal charging). Those cases, which established certain presumptions of vindictiveness, were decided before the constitutionality of many charging and plea-bargaining practices that are commonplace today was well-established. *E.g.*, *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) (holding that Due Process Clause does not prohibit prosecutor from carrying out threat to bring additional charges against an accused who refused to plead guilty to initial offense charged); *see generally* Tina Wan, *The Unnecessary Evil of Plea Bargaining: An Unconstitutional Conditions Problem and a Not-so-Least Restrictive Alternative*, S. Cal. Rev. L. & Soc. Just., Fall 2017, at 33, 41-45 (charting this development in the law of plea bargaining).

Against that backdrop, the Supreme Court held in *Blackledge* that a presumption of vindictiveness arises when a prosecutor responds to a conviction's being overturned on appeal by bringing more serious charges than those on which the defendant was initially tried. *See* 417 U.S. at 27-28. The Court later declined to extend that presumption, however, to the

circumstance in which a prosecutor responds to a defendant's *pretrial* rejection of a plea offer by bringing more serious charges.  *See Goodwin*, 457 U.S. at 382–83; *see also United States v. Stewart*, 590 F.3d 93, 122 (2d Cir. 2009) (noting that "the presumption of prosecutorial vindictiveness does not exist in a pretrial setting").

The operative distinction, the Court explained in *Goodwin*, is that prior to trial, investigations generally continue; prosecutors gather additional evidence and continue to reassess that which they already have.  After trial commences, in contrast, "it is much more likely that the State has discovered and assessed" all relevant information and "made a determination, on the basis of that information," as to what charges are appropriate.  *Goodwin*, 457 U.S. at 381.  Thus the basis for presuming vindictiveness in the latter situation but not the former.  The import of this distinction is that vindictiveness will now be presumed only in narrow circumstances.  As the Second Circuit has observed, the Supreme Court in *Goodwin* "limited" the holdings of *Pearce* and *Blackledge* "to their particular facts."  *United States v. Hinton*, 703 F.2d 672, 678-79 (2d Cir. 1983).

Despite Romanello's reliance on his prior prosecutions, this case fits within the "pretrial" rubric of *Goodwin* rather than the post-trial rubric of *Blackledge*.  This

is because the presumption of vindictiveness is closely tied to "the institutional bias inherent in the judicial system against the *retrial* of issues that have *already been decided.*" *Goodwin*, 457 U.S. at 376 (emphases added).  A new federal prosecution commenced years after an acquittal on separate federal charges does not implicate that institutional bias in the same way.  *See Johnson*, 171 F.3d at 140.

So, no presumption applies here.  Absent that, Romanello must demonstrate "actual" vindictiveness.  This requires "direct" evidence, such as a statement by the prosecutor evidencing a vindictive motive.  *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999).  The evidence must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) [the defendant] would not have been prosecuted except for the animus."  *Id.*  Romanello has proffered no such evidence.

Because only a prosecutor can bring charges, evidence of animus on the part of *other* federal law enforcement agents (like the FBI agents who visited Romanello in 2010) does not suffice, absent evidence that those agents "influence[d] . . . the bringing of th[e] prosecution."  *United States v. Goulding*, 26 F.3d 656, 662 (7th Cir. 1994); *see also United States v.*

*Lopez*, No. 97-CR-1191, 1998 WL 142338, at *3 (S.D.N.Y. Mar. 27, 1998) (no actual vindictiveness where "[t]here [wa]s nothing in the record that indicate[d] that *the prosecutors involved* harbored any animus toward [the defendant]." (emphasis added)). For example, in *Goulding*, the defendant argued that certain IRS agents "harbored ill will towards" him.  26 F.3d at 662.  But the Seventh Circuit rejected a vindictive prosecution theory because the defendant "failed to demonstrate that th[o]se agents had any influence on the bringing of th[e] prosecution."  *Id.* Meanwhile, the defendant made "no claim that the prosecutors who actually made the decision to bring charges against him acted vindictively."  *Id.*; *accord United States v. Ji*, No. 21-CR-265, 2023 WL 2722363, at *7 (E.D.N.Y. Mar. 21, 2023) (observing that "the case law is clear that any animus held by an investigator cannot automatically be attributed to the prosecution team," and collecting cases).[4]

Apart from the FBI agents' statements, the only basis Romanello offers for attributing vindictiveness to the instant prosecutors is that the U.S. Attorney of this district has now

---

[4] In any event, it is far from apparent that there is anything vindictive or otherwise improper about the FBI agents' 2010 "promise" that Romanello would face charges if he did not cooperate.  A prosecutor may properly base pretrial charging decisions on whether a defendant agrees to cooperate.  Indeed, "[i]t is precisely the responsibility of the prosecutor to weigh 'the societal interest in prosecution' against the potential benefits from a defendant's cooperation" when making pretrial charging decisions.  *United States v. Sanders*, 211 F.3d 711, 719 (2d Cir. 2000).

brought three separate cases against him.  But there is nothing inherently improper about a single prosecutor bringing multiple cases against a single defendant, especially when that defendant has acknowledged (via his 2012 guilty plea) an association with an organized crime family.  *See* Superseding Indictment 6, *United States v. Romanello*, 10-CR-929 (S.D.N.Y. June 8, 2011), ECF No. 31 (charging Romanello with racketeering conspiracy and alleging that he "was an acting captain, soldier and associate within the Genovese crime family"); Hr'g Tr. 19:9–12, 24:1–28:11, *id.* (Jan. 10, 2012), ECF No. 95 (Romanello's guilty plea).

Faced with a similar procedural history, a court in this district found no vindictiveness.  In *Johnson v. United States*, No. 11-CV-4730, 2014 WL 4545845, at *10 (E.D.N.Y. Sept. 12, 2014), the same prosecutor had previously prosecuted the defendant twice — once unsuccessfully.  *See id.*  The *Johnson* court nonetheless concluded that the defendant "set[] forth no evidence of actual vindictiveness."  *Id.*

Because no presumption of vindictiveness adheres on these facts, and Romanello has adduced no evidence of actual vindictiveness, the motion to dismiss for vindictive prosecution is denied.

## C.   Failure to State an Offense

Romanello's final argument for dismissal is that the indictment fails to state an offense — that it does not "allege

a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012); *see United States v. Taveras*, 504 F. Supp. 3d 272, 277-78 (S.D.N.Y. 2020) ("[A] charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged.").[5]

Typically, "to state an offense, an indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms." *United States v. Frias*, 521 F.3d 229, 235 (2d Cir. 2008). Thus, "a court cannot test the sufficiency of the government's evidence on a Rule 12(b) motion." *United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018). Instead, the court asks "whether [the defendant's] alleged activities, accepted as true, are prohibited by the statute." *United States v. Heicklen*, 858 F. Supp. 2d 256, 263 (S.D.N.Y. 2012).

Here, the indictment closely tracks the language of the statute in both counts. 18 U.S.C. § 894(a)(1), an anti-loansharking statute, prohibits "knowingly participat[ing] in

---

[5] The Motion's third basis for dismissal is purportedly insufficiency of the evidence presented to the grand jury. *See* Mot. 1 (citing Fed R. Crim. P. 12(b)(3)(A)(v)). However, Romanello's briefing indicates that this branch of the Motion instead challenges the sufficiency of the indictment's allegations under Fed. R. Crim. P. 12(b)(3)(B)(v), and I construe the Motion accordingly.

any way, or conspiring to do so, in the use of any extortionate means . . . to collect or attempt to collect any extension of credit." Consistent with this language, Count One of the indictment alleges that all defendants "did knowingly and intentionally agree to participate in the use of extortionate means to collect one or more extensions of credit." Indictment 1. Likewise, Count Two — the substantive loansharking charge — alleges that all defendants "did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit." *Id.* at 2.

Romanello essentially challenges the sufficiency of the government's evidence. He objects that the government will, at most, be able to show that he "arguably committed misdemeanor assault . . . while attempting to help a friend collect a gambling debt in which Romanello had no interest" — not extortion or loansharking. Romanello Mem. 6. To the extent he invites me to "look[] beyond the face of the indictment and dr[a]w inferences as to the proof that would be introduced by the government at trial," such an inquiry would be "premature" under well-established law. *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). As the government has made no "proffer of the evidence it intends to present at trial . . . , the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Id.* at 776-77; *cf.*

*United States v. Pacione*, 738 F.2d 567, 569 (2d Cir. 1984)
(affirming pretrial dismissal of loansharking charges where
district court had the benefit of "the totality of facts
asserted by the government to be provable against" the
defendant).

The motion to dismiss for failure to state an offense
is denied.

## D.  Severance from Bexheti

Romanello's next request is for severance of his trial
from Bexheti's under Rule 14(a).  He argues that severance is
required to permit him to call Bexheti as a witness.  Romanello
Mem. 7.  According to Romanello's lawyer, Bexheti will testify,
among other things: that Romanello was not involved in the
gambling ring that gave rise to the debt at issue; that the
money at issue was bookmaker Michael Regan's, not Romanello's;
that Regan told Bexheti not to threaten debtors; and that
Bexheti, Regan, Romanello and one of the alleged victims had
amicably discussed a potential resolution to the gambling debt
at issue over dinner one night at the victim's restaurant.  *Id.*
(citing McMahon Decl. ¶ 48).

"Joint trials generally serve the interests of
justice."  *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).  When
co-defendants are "alleged to have participated in a common plan
or scheme," there is a "particularly strong" preference for a

14

joint trial.  *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998).  A district court should grant severance only when there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

In considering severance to enable a defendant to call a co-defendant as a witness, the following factors apply, "without purporting to delimit the trial court's field of inquiry": (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter-arguments of judicial economy; and (4) the likelihood that the testimony would face substantial, damaging impeachment.  *United States v. Finkelstein*, 526 F.2d 517, 523-24 (2d Cir 1975).  A defendant who "fail[s] to set forth the basis, if any, for his suggestion that his co-defendant[] might exculpate him at a severed trial, or the content of such testimony, if given . . . has not carried the difficult burden of demonstrating sufficient prejudice to warrant severance."  *United States v. Sciandra*, 529 F. Supp. 320, 323 (S.D.N.Y. 1982) (applying *Finkelstein*).

Here, Romanello has made *no* showing that Bexheti would waive his Fifth Amendment privilege and testify at a severed

trial.  Romanello has not, for example, presented an affidavit from Bexheti attesting that Bexheti would take the stand.  *See United States v. Turoff*, 652 F. Supp. 707, 713 (E.D.N.Y. 1987) (co-defendant's "proffer of testimony, in the absence of an affidavit stating his willingness to take the stand, cannot create much confidence that he actually would testify were the trials severed"); *see also United States v. Sliker*, 751 F.2d 477, 495–96 (2d Cir. 1984) (affirming denial of severance motion in part because defendant failed to timely produce affidavit from co-defendant promising exculpatory testimony).

The possibility that Bexheti *could* waive his Fifth Amendment privilege, or that the trials could be "sequence[d]" to "obviate the privilege problem" is not enough.  *See Finkelstein*, 526 F.2d at 525.  Romanello also must show that Bexheti would testify *favorably* to Romanello, *see Sciandra*, 529 F. Supp. at 323, and that such testimony would not be "substantially" undermined via impeachment.  *Finkelstein*, 526 F.2d at 524.[6]

Romanello argues that it is immaterial whether Bexheti would testify live, because Bexheti made recorded statements to

---

[6] In *Finkelstein*, the Second Circuit wrote: "Given the fact that none of the co-defendants pleaded guilty or evidenced any intention of doing so, it is unrealistic to think that a co-defendant would be any more willing to waive his constitutional privilege against self-incrimination when called as a witness at a separate trial that he would be willing to insist upon his privilege as a defendant not to take the stand." *Id.*

the FBI that mirror the proffered testimony, and those would be admissible at the severed trial "as a declaration against penal interest" under Federal Rule of Evidence 804(b)(3) "and pursuant to the Fifth and Sixth Amendments to the United States Constitution."  Romanello Mem. 7.  This argument fails.  If Bexheti's statements would be admissible only at a severed trial, that might affect the severance analysis.  *See United States v. Ferguson*, 676 F.3d 260, 287-88 & n.30 (2d Cir. 2011) (considering similar argument as part of a *Finkelstein* analysis).  But Romanello has not stated a basis to believe that severing his trial from Bexheti's would impact the admissibility of Bexheti's recorded statements.

Romanello proposes to offer these out-of-court statements for their truth: that Romanello was not extortionately collecting a gambling debt.  *See* Fed. R. Evid. 801(c).  They are not admissions of a party opponent, Fed. R. Evid. 801(d)(2), because Romanello and Bexheti are not adverse (either in the extant case or post-severance).  *See United States v. Harwood*, 998 F.2d 91, 97 (2d Cir. 1993) ("a co-defendant . . . is not a party opponent").  Romanello must therefore fit Bexheti's statements into a hearsay exception.

However, Romanello fails to demonstrate that any hearsay exception would operate differently in a joint versus a severed trial.  The only hearsay exception Romanello cites, for

17

statements against penal interest, Fed. R. Evid. 804(b)(3), would not necessarily function differently.  That rule allows admission of a hearsay statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to . . . criminal liability."  *Id.*  If "offered in a criminal case as one that tends to expose the declarant to criminal liability," the statement must be "supported by corroborating circumstances that clearly indicate its trustworthiness."  *Id.*  In addition, the "the declarant whose statement is sought to be introduced [must] be unavailable as a witness," *United States v. Miller*, 954 F.3d 551, 561 (2d Cir. 2020) — for example, because he has "properly invoke[d] his Fifth Amendment right against self-incrimination," *id.*, or has declined to take the stand at a joint trial.  *United States v. Bakhtiar*, 994 F.2d 970, 977 (2d Cir. 1993).  Romanello offers no compelling argument for how severing his trial would change the analysis of any of these elements.[7]

---

[7] Romanello also cites the Sixth Amendment as a basis for admission of Bexheti's statements in a severed trial, but Romanello does not explain why any Sixth Amendment right he may have to introduce Bexheti's statements would depend on severance.  To be sure, under the rule of *Bruton v. United States*, 391 U.S. 123 (1968) "a defendant is deprived of his rights under the [Sixth Amendment] Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant."  *Samia v. United States*, No. 22-196, 2023 WL 4139001, at *3 (U.S. June 23, 2023).  But that rule is inapposite here, where Romanello wishes to *admit* Bexheti's statement, not preclude its admission.

Overall, Romanello cannot overcome the strong preference for a joint trial with Bexheti, his alleged compatriot in "a common plan or scheme."  *Salameh*, 152 F.3d at 115.  The motion to sever is thus denied.

### V.   Conclusion

The Motion is DENIED in its entirety.


SO ORDERED.


_/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:     July 7, 2023
           Brooklyn, New York