UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA

                -against-                **MEMORANDUM & ORDER**

ANTHONY ROMANELLO, LUAN BEXHETI, and       22-CR-194(EK)
JOSEPH CELSO,

                Defendants.

------------------------------------x

ERIC KOMITEE, United States District Judge:

Defendants Anthony Romanello and Joseph Celso are currently on trial on charges of extortionate collection of credit, conspiracy, and obstruction of justice. The government and defendant Romanello have each made a motion *in limine*. The Court grants both motions for the reasons that follow.

## I.   Romanello's Post-Arrest Statements

Defendant Romanello moves to admit a portion of his post-arrest statement under the rule of completeness. The Court granted that motion on the record. This opinion memorializes the Court's reasoning.

The government introduced, through the testimony of FBI Special Agent Thomas Cribbin, certain statements that Romanello made following his arrest on May 3, 2022. These statements were memorialized in a report made by the arresting agent on May 9 — six days later — on Form 302. In particular,

the FBI agent who made the report testified to Mr. Romanello's statements that: after he "interceded" to help collect a gambling debt from a restauranteur, the "victim" restauranteur "said" to Romanello that he "was not going to make any payments" in satisfaction of the debt.  This response, the agent reported Romanello as saying, made him feel "like hitting the victim." Following that, "he [Romanello] punched him [the restauranteur victim] in the mouth."

In response, Romanello sought to cross-examine the agent about another portion of the same 302: specifically, Romanello's suggestion that he punched Bruno because Bruno "told ROMANELLO that Italians were 'washed up.'"  Gov't Exh. 3500-JCA-1 at 3.[1]  This is relevant to the defense, Romanello argues, as it shows that he threw the punch because he was feeling disrespected — and not, as the indictment charges, in furtherance of the extortionate collection of credit.

Romanello offers three bases for admission over a hearsay exception: that the "washed up" statement is not hearsay under FRE 801; that the residual exception in FRE 806 applies; and that the statement must be admitted under the rule of completeness.

---

[1] Romanello's counsel confirmed that this is the only portion of the statement he is seeking. Tel. Conf. Record'g (Dec. 5, 2023).

## A.    Romanello's Statement is Hearsay

The statement at issue contains three levels of hearsay.  Essentially, we have: (1) the FBI agent reporting, via the 302, that (2) Romanello reported, following his 2022 arrest, that (3) the victim — named Bruno — said in 2017 that Italians are washed up.  The defense has a hearsay problem with the second level — the one with Romanello as the declarant.

The first level is not (necessarily) a hearsay problem because the agent was on the stand and could simply be asked — without reference to the 302 — whether Romanello made the statements at issue.  The third level is not a hearsay problem because *Bruno's* statement was not offered for its truth – whether Italians are washed up is not in issue.  Rather, it was elicited for its effect on the listener (i.e., Mr. Romanello punching Bruno).

The second level, however, is hearsay: *Romanello's report* that Bruno made the statement at issue.  And no hearsay exception applies.

## B.   The Residual Exception is Not Satisfied

The only exception the defendant has invoked is the residual exception.  The residual exception, as codified in F.R.E. 807(a), is satisfied when "(1) the statement is supported by sufficient guarantees of trustworthiness — after considering the totality of circumstances under which it was made and

evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a).  The Second Circuit has instructed that a statement should only be admitted under Rule 807 if "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party." *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004).  The residual exception "will be used very rarely, and only in exceptional circumstances."  *Parson v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991).

Romanello's statements, as filtered through the FBI agent's notes, are not supported by adequate guarantees of trustworthiness.  Romanello's statements were "not made under oath or in an adversarial proceeding subject to cross examination," *Smith v. Perez*, 2023 WL 4540439, at *7 (D. Conn. July 14, 2023), and, unlike in *Morgan*, he had every reason to expect that the statements would "find [their] way into the hands of the police," given that he was speaking directly to a law enforcement officer.  *See Morgan*, 385 F.3d at 209 (admitting

a letter written to the declarant's boyfriend under the residual exception).

Romanello's statements to the agent are also not supported by the same guarantees of trustworthiness present in *United States v. Carneglia*. There, the district court admitted police reports containing an eyewitness's statement under Rule 807.  256 F.R.D. 384, 392 (E.D.N.Y. 2009).  The statements "were consistent with statements in another police report provided by the same witness, one hour after the shooting, that the court admitted as excited utterances under Rule 803(2)."  *United States v. Hill*, 2014 WL 198813, at *4 (E.D.N.Y. Jan. 14, 2014) (citing *Carneglia*, 256 F.R.D. at 392-93).  No such corroboration exists here.

**C.   Part of Romanello's Statement is Admissible under the Rule of Completeness**

Even if it is otherwise inadmissible hearsay, Romanello argues that the "washed up" statement should be admitted under the rule of completeness.  When this issue first arose, the Court asked whether the rule – codified at F.R.E. 106 – even applies to oral statements, given its reference to the remainder of "related *writings* or *recorded* statements."  Fed. R. Evid. 106 (emphasis added).  The Second Circuit, however, has held that the *common-law* rule of completeness does apply to oral statements, even though Rule 106 does not.  *See United States v.*

*Williams*, 930 F.3d 44, 59 (2d Cir. 2019); *see also United States v. Alvarado*, 882 F.2d 645, 650-51 & n.5 (2d Cir. 1989) (invoking Rule 611 in support of that proposition).  The government concedes that the rule applies.  Still, they argue that it does not require the admission of Romanello's requested evidence.

The rule of completeness requires admission of additional portions of an admitted statement when the additional portions are "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure the fair and impartial understanding of the admitted portion."  *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007).  Among other authority, the government invokes *Williams*, 930 F.3d at 44, in support of its effort to exclude Romanello's proffered portion.  In *Williams*, the police department recovered a concealed weapon from the center console of the car Williams had been driving.  *Id*. at 51-52.  When interviewed by detectives, Williams initially denied ownership of the car, saying it was his girlfriend's.  After the detectives asked Williams whether he was suggesting the gun belonged to his girlfriend, he changed course, admitting that the gun was his.  The Second Circuit held that the district judge did not abuse her discretion by allowing the government to introduce the confession, but declining to allow the defendant to introduce his initial denial. The Court of Appeals held:

6

> It is not uncommon for a suspect, upon interrogation by police, to first claim in a self-serving manner that he did not commit a crime, only thereafter to confess that he did.  But the rule of completeness does not require the admission of self-serving exculpatory statements in all circumstances, and the mere fact that a suspect denies guilt before admitting it, does not—without more—mandate the admission of his self-serving denial.

*Id.*

The circumstances here, however, are different: on this Court's reading of the Romanello 302, he did not merely deny his guilt initially and then later admit it.  Instead, he presented — in seemingly rapid succession — two causes for his having punched Bruno: Bruno's comment that Italians were washed up, and Bruno's stated intent not to make any payments in response to Romanello's request.[2]  The evidence introduced so far by the government suggests that Romanello ascribed a single cause to the punch: Bruno's refusal to pay.  To ensure a "fair and impartial" understanding of that suggestion, Romanello's counsel must be permitted to seek to elicit the second cause appearing in the 302.[3]

---

[2] The Romanello 302 sets forth these two causes in a single sentence: "ROMANELLO became angry when the victim told ROMANELLO that the Italians were 'washed up' and he did not intend to make any payments to ROMANELLO."  Gov't Exh. 3500-JCA-1 at 3.

[3] Romanello's counsel confirmed on the December 5 conference call that he will not seek to elicit other statements contained in the Romanello 302. Tel. Conf. Record'g (Dec. 5, 2023).

## II.   Luan Bexheti's Statements in 302 Reports

The government has moved *in limine* to preclude the defendants from introducing certain statements made by a former co-defendant, Luan Bexheti.  Those statements are recorded in two FBI 302s memorializing interviews of Bexheti by FBI agents. The first took place on March 5, 2020, outside of Bexheti's residence in Queens.  The second occurred on May 3, 2022, at 26 Federal Plaza in Manhattan following Bexheti's arrest.

Again, these statements contain multiple levels of hearsay: they purport to reflect at least (i) out-of-court statements made by Mr. Bexheti, as recorded in (ii) the out-of-court writing of the FBI agent who prepared the 302s.  Romanello argues that they are admissible over a hearsay exception because (a) Bexheti's statements are against penal interest, and thus admissible under FRE 804(b)(3); and (b) the 302s are business records of the FBI under FRE 803(6).  For the reasons set forth in the government's briefing and the ones that follow, the governments' motion to preclude this evidence is granted.

Defendant Romanello has not (despite the court's repeated requests) given the court a comprehensive list of the statements he seeks to introduce.  He has pointed to the following statements as examples: "REGAN advised BEXHETI when money was owed, not to threaten the gamblers;" "BEXHETI knows the money to be owed to REGAN not ROMANELLO but assumes that

8

ROMANELLO would be getting something out of it;" and "ROM told BRUNO 'I feel like punching you.' BRUNO told ROM that 'he had no balls.' ROM then hit BRUNO."  ECF 104, Ex. A, at 3, 4, 7.

## A.    The Specific Statements That Romanello Seeks to Introduce are not Against Interest

The hearsay exception for statements against interest requires, as relevant here, that the proffered statement have "so great a tendency . . . to expose the declarant to . . . criminal liability" that a person in the declarant's position could only be expected to make it if he genuinely believed it to be true.  Fed. R. Evid. 804(b)(3).  This is obviously a high bar, and Second Circuit precedent indicates that statements to law enforcement are generally unlikely to clear it.  *See, e.g.*, *United States v. Matthews*, 20 F.3d 538, 545-46 (2d Cir. 1994) (contrasting the reliability of statements to authorities with the reliability of statements to friends).  The party invoking the exception must demonstrate not only that the statement in question is "truly" against interest, *Williamson v. United States*, 512 U.S. 594, 603 (1994), but also that it bears adequate indicia of reliability.  *See* Fed. R. Evid. 804(3)(B).

Moreover, the Supreme Court and Second Circuit interpret the word "statement" narrowly in this context.  *See* *Williamson*, 512 U.S. at 599 (defining a "statement" under Rule 804(b)(3) as "a single declaration or remark"); *United States v.*

*Sasso*, 59 F.3d 341, 349 (2d Cir. 1995) (fact that a "particular hearsay statement" may be against penal interest does not render the "entire narrative" admissible).

While certain statements in the Bexheti 302s could reasonably be characterized as being against his penal interest, that cannot be said about the specific lines that Romanello seeks to introduce. For example, it was not "truly self-inculpatory" for Bexheti to insist that he was under orders from Regan "not to threaten the gamblers." ECF 104, Ex. A, at 3. That statement is self-serving in that it seeks to distance Bexheti from extortionate behavior. And merely stating that the debts were owed to Regan rather than Romanello does little to inculpate Bexheti; rather, it merely shifts blame from Romanello to Regan. Certainly, Bexheti's statement that Romanello punched Bruno in the steakhouse does nothing to inculpate Bexheti.

And Romanello has not carried his burden of showing that the statements in question bear adequate "indicia of reliability." *United States v. Doyle*, 130 F.3d 523, 543 (2d Cir. 1997). The reliability of the statements is tied up with the question of whether they are truly self-inculpatory. A statement implicating "the declarant in a crime is generally trustworthy, for people do not ordinarily make statements damaging to themselves unless they are true." *United States v. Matthews*, 20 F.3d at 545. Here, Bexheti's statements were made

10

to law enforcement authorities in response to questioning, which obviously provides some incentive to minimize his role in the crimes under investigation.  *Id.* (finding that the absence of law enforcement questioning makes a statement more trustworthy).

Finally, Bexheti's statement under oath during his plea allocution is at least in tension with the 302s.  *See, e.g., United States v. Serrano*, 192 F. Supp. 3d 407, 413 (S.D.N.Y. 2016) ("[W]hen a hearsay declarant gives one story — and later changes it — there may be reason to doubt a statement's reliability.").  According to the 302, Bexheti said that Regan told him "not to threaten the gamblers."  ECF 104, Ex. A, at 3.  But during his plea allocution, Bexheti said that it was his "intention and belief that the mere presence of [his co-conspirators] carried an implied . . . threat of force or violence, which would assist in collecting the debt, and that force may be used."  ECF No. 70, Tr. of Plea Hr'g (Oct. 4, 2023) at 37:08-37:12.  These two statements are in tension, if not directly contradictory, and this diminishes the 302's trustworthiness on one of the central issues in this case.

**B.   The FBI Reports on Form 302 are not Business Records**

As noted above, Romanello also has to articulate a hearsay exception for the *agent's* statements — i.e. the 302s themselves — and he cannot.  It is established in the Second Circuit that 302s are not generally admissible under the

business records rule.  *United States v. Feliz*, 467 F.3d 227,
234 (2d Cir. 2006) ("This Court has further construed Rule
803(6) to exclude records in criminal cases containing
observations made by police officers or other law enforcement
personnel.").  The Court of Appeals has been clear that records
created in anticipation of, and for use in, litigation are not
admissible under Rule 803(6).  Other than the fact that agents
prepare 302s in most FBI investigations, there is nothing
"regular" about them.  The contents are generally – and this is
true here — highly specific, narrative recitations that differ
from one to the next like snowflakes.  *See generally United
States v. Strother*, 49 F.3d 869, 875-76 (2d Cir. 1995)
(expressing reluctance "to adopt a rule that would permit the
introduction into evidence of memoranda drafted in response to
unusual or 'isolated' events"); *United States v. Quezada*, 754
F.2d 1190, 1193-94 (5th Cir. 1985) (contrasting "routine" law
enforcement reports, prepared in a "non-adversarial" setting,
with narrative reports made in the investigation of criminal
activity).

## III. Conclusion

The government's motion to preclude the introduction of Bexheti's 302 reports and Romanello's motion to admit a portion of his post-arrest statement are both granted.

The Clerk of Court is directed to terminate ECF No. 104.

SO ORDERED.

__/s/ Eric Komitee__
ERIC KOMITEE
United States District Judge


Dated:    December 6, 2023
          Brooklyn, New York